UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TRACEY E. SCHNELKER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CAUSE NO. 1:20-cv-00429-SLC** |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Tracey E. Schnelker appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI").  (ECF 1).  For the following reasons, none of Schnelker's arguments are

persuasive, and thus, the Commissioner's decision will be AFFIRMED.

## I.  FACTUAL AND PROCEDURAL HISTORY

Schnelker applied for DIB and SSI on July 20, 2018, alleging disability as of  June 27,

2018.  (ECF 19 Administrative Record ("AR") 18, 244, 251).  Her claim was denied initially and

upon reconsideration.  (AR 95-122, 125-54).  After a timely request (AR 177-78), a hearing was

held on January 9, 2020, before administrative law judge ("ALJ") William Pierson, at which

Schnelker, who was represented by counsel, and a vocational expert ("VE") testified.  (AR 36-

94).  On January 29, 2020, the ALJ rendered an unfavorable decision to Schnelker, concluding

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th
Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments.  (AR 18-31).  Schnelker's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

Schnelker filed a complaint with this Court on November 23, 2020, seeking relief from the Commissioner's decision.  (ECF 2).[2]  In her appeal, Schnelker alleges that the ALJ:  (1) erred when weighing the opinion of a consulting examiner, Dan Boen, Ph.D.; (2) erred when weighing the opinion of Schnelker's treating physician, Christopher Frazier, M.D.; (3) improperly discredited Schnelker's symptom testimony; and (4) should have restricted Schnelker to sedentary work at step five.  (ECF 27 at 6-7).  To the extent that the ALJ did identify sedentary jobs Schnelker could perform, Schnelker contends he failed to identify jobs that exist in significant numbers in the national economy.  (*Id.*).

At the time of the ALJ's decision, Schnelker was forty-eight years old (AR 29), had received a GED (AR 29, 291), and had relevant work experience as a machine operator and inspector (AR 29; *see also* AR 292).  In her applications, Schnelker alleged disability due to chronic back pain, degenerative disc disease, anxiety, depression.  (AR 96, 110, 291).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

---

[2] Schnelker initially filed her complaint with unrelated attachments (ECF 1) before refiling the complaint with the correct attachments (ECF 2).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).  "Substantial evidence must be more than a scintilla but may be less than a preponderance."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner."  *Clifford*, 227 F.3d at 869 (citations omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive."  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB or SSI must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).  A

3

physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[3]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

### B.  The Commissioner's Final Decision

On January 29, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision.  (AR 15-31).  At step one, the ALJ concluded that Schnelker had not engaged in substantial gainful activity since June 27, 20218, her alleged onset date.  (AR 20). At step two, the ALJ found that Schnelker had the following severe impairments:  pulmonary

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

obstruction, generalized anxiety disorder, moderate major depressive disorder, and lumbar

degenerative disc disease and facet changes with mild to moderate stenosis. (*Id.*).

At step three, the ALJ concluded that Schnelker did not have an impairment or

combination of impairments severe enough to meet or equal a listing. (AR 21). The ALJ then

assigned Schnelker the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) except the claimant should
> not climb ropes, ladders or scaffolds. The claimant can
> occasionally kneel, crouch, and crawl. The claimant can
> occasionally bend and stoop, in addition to what is required to sit.
> The claimant can occasionally use ramps and stairs. Aside from
> use of ramps and stairs on an occasional basis, the claimant should
> not work upon uneven surfaces. The claimant should avoid
> working upon wet and slippery surfaces. The claimant can
> perform the balance required of such activities. The claimant
> should avoid work within close proximity to open and exposed
> heights and open and dangerous machinery such as open flames
> and fast moving exposed blades. The claimant should avoid work
> involving concentrated exposure to vibration such as using heavy
> sanders. The claimant is limited from concentrated exposure to
> excessive airborne particulate, dusts, fumes and gases and
> excessive heat, humidity and cold such as when working outside or
> within a sawmill, boiler room, chemical plant, green house,
> refrigerator or sewage plant. The claimant is unable to perform
> complex tasks. The claimant can perform simple, routine tasks and
> instructions throughout the workday. The tasks contemplated are
> [Specific Vocational Preparation] 1 and 2 type tasks that can be
> learned within a short period through short demonstration, or when
> beyond short demonstration, within up to 30 days. The claimant
> can respond or adapt to the changes, cope with the stress and
> engage in the decision making required of such tasks. With such
> limitations in place, the claimant can maintain the concentration,
> persistence, adaptation and even the pace required of such tasks for
> two-hour increments, and for eight hour work days-within the
> confines of normal work place breaks and lunches-on a sustained
> day to day basis.

(AR 22-23).

5

The ALJ found at step four that Schnelker was unable to perform any of her past relevant work.  (AR 29).  At step five, the ALJ found that given her age, education, work experience, and RFC, Schnelker could perform light exertional level jobs that exist in significant numbers in the national economy, including checker (50,000 jobs), routing clerk (43,000 jobs), and mail sorter (55,000).  (AR 30).  Alternatively, the ALJ found that Schnelker could perform sedentary exertional level jobs that exist in significant numbers in the national economy, such as document preparer (18,000 jobs), call out operator (45,000 jobs), and telephone quotation clerk (35,000 jobs).  (*Id.*).  As such, Schnelker's applications for DIB and SSI were denied.  (AR 31).

### C.  Dr. Boen's Opinion

Schnelker first contends that the "ALJ err[ed] in weighting [sic] the opinion of its own psychological consultive examining doctor, Dan Boen, Ph.D., that [she] would have trouble remembering what she was asked to do on a job[.]"  (ECF 27 at 6).  In particular, Schnelker points to Dr. Boen's January 9, 2020, consultive examining opinion where he opined in part:

> [Schnelker] would not have trouble understanding what [she] was asked to do on a job.  [She] would have trouble remembering what [she] was asked to do on a job.  [She] would not have difficulty being able to concentrate on the job.  [She] would not have difficulty being able to stay on task.  [She] would not have difficulty being able to get along with coworkers.  [She] would not have difficulty being able to get along with a boss.

(AR 568).  Schnelker contends that the ALJ failed to provide a "good reason" for allegedly discounting Dr. Boen's opinion.  (ECF 27 at 12).  More specifically, Schnelker faults the ALJ for failing to translate Dr. Boen's opinion that Schnelker "would have trouble remembering what she was asked to do on a job" into the RFC.  (*Id.* at 15 (emphasis omitted)).  The Commissioner, in response, contends that the ALJ did not discount Dr. Boen's opinion—noting that the ALJ found

the opinion to be persuasive and consistent with the medical evidence in the record.  (ECF 28 at

6).  Further, the Commissioner contends that the ALJ accounted for Schnelker's alleged memory

problems—as included in Dr. Boen's opinion—by limiting her to "simple, routine tasks and

instructions" which would be "repetitive from day to day."  (*Id.* (emphasis omitted) (quoting AR

22-23)).  As the ALJ explained, "keeping the work tasks repetitive and the same from day to day

will help [Schnelker] remember what to do."  (AR 26).  Ultimately, the ALJ adequately

accounted for the weight afforded to Dr. Boen's decision and how it factored into the RFC

analysis.

To explain, when considering the persuasiveness of any medical opinion, an ALJ must

consider the following factors:  supportability; consistency; relationship with the claimant,

including the length of the treatment relationship, frequency of examination, purpose of the

treatment relationship, extent of the treatment relationship, and examining relations;

specialization; and any other factors that tend to support the medical opinion, including evidence

that the medical source is familiar with other medical evidence or has an understanding of social

security policies.  *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *see also Inmam v. Saul*, No. 1:20-

CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021).

"The regulations state that supportability and consistency are the most important factors

to consider, and that the other three factors only require discussion if it is appropriate for the

determination."  *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D.

Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL

411440 (N.D. Ind. Feb. 5, 2021).  "Supportability" means that "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to support his

7

or her medical opinion or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency," on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Further, "the RFC determination is one firmly within the ALJ's discretion to determine, so long as [he] sufficiently articulates his reasoning and the record adequately supports his conclusion." *Terry v. Astrue*, No. 3:09-CV-503 JD, 2011 WL 855346, at *17 (N.D. Ind. Mar. 7, 2011) (collecting cases). "[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence"). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions." *Id.* at 657-58 (citation omitted); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

Here, the ALJ adequately articulated his reasoning. The Court "read[s] the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted)). In his analysis, the ALJ first noted that he found Dr. Boen's opinion "more persuasive" than Dr. Frazier's (AR 25), before stating that he

found Dr. Boen's opinion "persuasive" outright (AR 28).  In both instances, the ALJ noted that

Dr. Boen's opinion was consistent with the medical records—specifically, treatment notes from

February 2018 to November 2019 reflecting normal memory—and lack of mental health

treatment.  (*Id.*; *see* AR 584, 587, 590, 593, 597, 603, 609).  Further, while not directly

comparing the state agency experts' opinions to that of Dr. Boen, the ALJ observed that the

assigned RFC was consistent with—or more restrictive than—those opined by the state agency

experts at the initial and reconsideration levels who had both reviewed Dr. Boen's opinion.  (AR

28).  Indeed, the state agency physicians at both the initial and reconsideration levels found—at

step two—that Schnelker only had "mild" limitations in understanding, remembering, and

applying information.  (AR 100, 114, 131, 146).  Further, both Patricia Garcia, Ph.D., at the

initial level and Donna Unversaw, Ph.D., at the reconsideration level determined that Schnelker

"can understand, remember, and carry out detailed tasks."  (ECF 106, 120, 137, 152); *see Scheck

v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (noting that ALJs are entitled to rely upon the

opinions of state agency doctors).  Still more, the ALJ acknowledged that Schnelker frequently

denied memory problems and at the hearing testified that she did not know how her memory was

impaired.  (AR 25; *see also* AR 79-80).  Given the foregoing, the ALJ adequately explained his

reasoning for crediting Dr. Boen's opinion, focusing on its consistency with the record.

Schnelker's argument to the contrary is—for a variety of reasons—somewhat hard to

follow.  First, there is no indication that the ALJ actually "discounted" or "rejected" Dr. Boen's

opinion as Schnelker contends, given that the ALJ explicitly stated that he found Dr. Boen's

opinion to be persuasive and limited Schnelker to repetitive tasks to accommodate her memory-

related limitations.  (*See* AR 26).  Schnelker does suggest that the ALJ improperly discounted

Dr. Boen's opinion by relying on Dr. Frazier's treatment notes reflecting normal memory.  (ECF 27 at 18-19; *see also* AR 26, 422, 453, 463).  But again, consistency with the evidence in the record is one of the most important factors for the ALJ to consider when weighing opinion evidence, and a review of the medical record consistently shows a lack of reported memory problems and normal findings as to memory.  *See* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions are supportability . . . and consistency . . . ."); 20 C.F.R. § 416.920c (same); (*see also* AR 422, 453, 463, 471, 474, 480, 486, 490, 493, 496, 499, 501).

Schnelker also contends that the ALJ misread or misinterpreted Dr. Boen's opinion—observing that the ALJ initially stated that "Dr. Boen noted *possible* difficulties remembering" (AR 26 (emphasis added)), whereas Dr. Boen actually opined that Schnelker "*would* have trouble remembering what [she] was asked to do on a job" (AR 568 (emphasis added)).  (ECF 27 at 15).  As even Schnelker acknowledges, though, the ALJ repeated Dr. Boen's opinion in full before again stating that he found it persuasive.  (ECF 27 at 15; *see* AR 28).  As such, there is little reason to think that the ALJ was not aware of the extent of Dr. Boen's opinion.

What seems to be at the heart of Schnelker's argument is that the ALJ's RFC determination does not adequately incorporate Dr. Boen's opinion about Schnelker's memory limitations.  (ECF 27 at 17).  In a similar vein, Schnelker contends that the ALJ's hypothetical to the VE fails because it did not adequately include limitations pertaining to memory.  (*Id.*).  But as mentioned, the RFC determination is ultimately reserved to the ALJ, and it is not clear how the RFC formulation fails to adequately account for Schnelker's alleged memory deficiencies.  A judge within this district just two years ago found that substantially the same opinion offered by

the same doctor was accounted for by limiting the claimant to "simple work with no unpredictable workplace changes."  *See Richard D. v. Saul*, No. 1:18-CV-388, 2019 WL 4126680, at *5 (N.D. Ind. Aug. 30, 2019).  Further, Schnelker does not cite any other evidence indicating a need for greater limitations than those provided by the ALJ.  *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("The ALJ found that Jozefyk's memory and concentration were slightly impaired, but Jozefyk cites no evidence that those deficits keep him from performing simple, routine, and repetitive tasks."); *see also William F. v. Saul*, No. 3:18-CV-934 JD, 2019 WL 4727722, at *4 (N.D. Ind. Sept. 26, 2019) ("Mr. F.'s impairments relate largely to memory, which are accommodated by the limitation to simple, routine, and repetitive tasks.  Mr. F. has not shown that the record supports greater restrictions than those in the RFC."); *Parker v. Astrue*, No. 8:08-CV-820-T-TGW, 2009 WL 2602268, at *5 (M.D. Fla. Aug. 24, 2009) ("Accordingly, due to memory deficiencies, the law judge limited the plaintiff to work involving simple, routine, repetitive instructions, and requiring only simple judgment and simple changes in work settings.").

In sum, the ALJ built a logical bridge between the evidence and his conclusion with respect to Dr. Boen's opinion and Schnelker's memory limitations.  Accordingly, remand is not required on these grounds.

### D.  Dr. Frazier's Opinion

Schnelker next argues that the ALJ erred in discounting Dr. Frazier's opinion about Schnelker's physical limitations.  (ECF 27 at 20).  Dr. Frazier opined in an October 2018 medical source statement that Schnelker has "chronic thoracic and lumbar pain that is exacerbated by prolonged standing and walking, heavy lifting," and that "[s]he will have

stiffness if sitting longer than 30 minutes."  (AR 402).  Similarly, in a February 2019 medical

source statement, Dr. Frazier opined that Schnelker has "chronic lumbar back pain with

radiculopathy related to lumbar spondylosis. . . .  The pain increases with activities lifting over

20 lbs, standing for longer than 30 minutes in one place, repetitive bending, squatting, and

walking."  (AR 576).  Nevertheless, at the time, Dr. Frazier also stated that Schnelker "ha[d] no

limitations with sitting, speaking, hearing, and traveling."  (*Id.*).  Finally, on November 10,

2019—after Schnelker's application had been denied at the initial and reconsideration levels (*see*

AR 107-08, 121-22, 139, 153-54)—Dr. Frazier completed a medical opinion form, marking that

Schnelker could stand or walk about 3 hours total per day, stand 30 minutes before needing to

change position, must walk around at least 5 minutes every 30 minutes, and needs the

opportunity to shift at will from sitting to standing/walking.  (AR 633).

       The ALJ considered Dr. Frazier's opinion, but ultimately found it unpersuasive.  (AR 25,

28-29).  In so doing, the ALJ observed that Dr. Frazier had not treated Schnelker since at least

August 2018—except for one appointment on November 10, 2019, when he completed the

medical opinion form.  (*Id.*).  The ALJ further observed that Dr. Frazier's medical source

statements were not consistent with his own contemporaneous treatment notes—other than

Schnelker's self-reported symptoms—or other treatment notes in the record.  (*Id.*).  Indeed, the

ALJ observed that at the hearing Schnelker indicated that Dr. Frazier used her subjective

responses in filling out the form.  (*Id.*; *see* AR 83-85).  Finally, the ALJ noted that Dr. Frazier

primarily treated Schnelker for anxiety, depression, and other conditions—not her pain.  (AR 25,

28-29).

Schnelker now alleges that the ALJ cherry-picked evidence in support of his conclusion—pointing to the fact that Schnelker had repeatedly received joint injections without long term pain relief, her diagnosis of myofascial pain, and her continued prescriptions of pain medication.  (ECF 27 at 23-24).  As such, Schnelker contends that the ALJ failed to show how the treatment notes in the record were inconsistent with Dr. Frazier's opinion.  (*Id*. at 24).

But again, the Court reads the ALJ opinion as a whole and with common sense. *Buckhanon ex rel. J.H.*, 368 F. App'x at 678-79.  While the ALJ may not have discussed the evidence Schnelker now points to in the context of Dr. Frazier's opinion, he did discuss it.  For example, the ALJ observed that while joint injections initially "improved her functioning somewhat," Schnelker continued to report pain.  (AR 27).  The ALJ noted, however, that these subjective reports of pain did not correlate with objective exam evidence, which consistently showed no acute distress, full strength in the lower extremities, no sedation, the ability to transition independently, non-antalgic gain, no foot drop, and intact sensation.  (*Id.*; *see, e.g.,* AR 584, 587, 590, 593, 597, 603, 609).

Further, the ALJ considered that spinal imaging in 2018 showed only "mild degeneration."  (AR 27; *see* AR 571, 615).  The ALJ also observed that the MRI evidence in the record showed only mild to moderate stenosis.  (AR 27; *see* AR 542-43).  The ALJ additionally noted that Schnelker often, though not always, reported pain levels as low as 0/10 or 4/10, and that her medications made her pain tolerable enough to allow her to work 3 hours at a time.  (AR 27; *see* 474, 480, 486, 489, 492, 495, 498, 501, 506, 518, 523, 525, 531).  Again, the ALJ indicated that his conclusions were consistent with, and more restrictive than, the state agency physicians who also reviewed Dr. Frazier's initial medical source statements and treatment

notes—though not the November 2019 opinion form—before determining that Schnelker was able to perform light work. (AR 28). That is, reviewing the same treatment notes and medical evidence, the state agency doctors determined that Schnelker could stand or walk for approximately six hours in an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

As such, the ALJ clearly considered both the supportability and consistency of Dr. Frazier's opinion with the record, as well as the nature of Dr. Frazier's treatment. All of this is permissible. *See Inmam*, 2021 WL 4079293, at *2. Further, the ALJ was permitted to discount Dr. Frazier's opinion to the extent it was based on Schnelker's own subjective symptoms. *See Ziegler v. Astrue*, 576 F. Supp. 2d 982, 998 (W.D. Wis. 2008) ("It is well settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility." (collecting cases)), *aff'd,* 336 F App'x 563 (7th Cir. 2009); *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("The portion of Dr. Cascino's report concerning Mr. Diaz's limited ability to sit, stand or walk appears to be based upon Mr. Diaz's own statements about his functional restrictions at the time of the examination. The ALJ could consider this portion of the report less significant than the doctor's other findings, and we shall not reweigh the evidence on appeal." (citation omitted)).

14

Schnelker's argument that the ALJ failed to explain how the treatment notes were inconsistent with Dr. Frazier's opined limitations in light of her chronic pain has more traction. After all, "as countless cases recognize, the etiology of extreme pain is often unknown, and can be severe and disabling even in the absence of 'objective' medical findings demonstrating a physical condition that normally causes pain of the severity claimed by the applicant." *Cauley v. Berryhill*, 312 F. Supp. 3d 746, 759 (N.D. Ind. 2018) (citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)). Indeed, even normal gait and muscle strength are not necessarily inconsistent with claims of debilitating pain. *See Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) ("The administrative law judge said that Adaire was seen to be able to move around 'with ease and had a normal gait.' In other words, he does not limp. She didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps."); *Otis S. v. Saul*, 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019) ("An ALJ's independent reliance on a claimant's muscle strength to depart from a medical opinion regarding such limitations therefore suggests an improper tendency to 'play doctor.'").

But the ALJ here did not solely rely on his own interpretation of the objective medical evidence—which would constitute playing doctor—as he also relied on the state agency physicians' opinions. *Cf. Clifford*, 227 F.3d at 870 ("[T]he ALJ did not cite to any medical report or opinion that contradicts Dr. Combs's opinion. In effect, the ALJ substituted his judgment for that of Dr. Combs . . . . That was error."); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) ("The regulations, and this Circuit, clearly recognize that reviewing physicians . . . are experts in their field and the ALJ is entitled to rely on their expertise."). Further, Schnelker cannot save her argument simply by pointing to Dr. Frazier's diagnoses.

"The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). "[P]ointing to various diagnoses and complaints and saying that they might hinder [Schnelker] is insufficient to establish the existence of a functional limitation." *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018); *see also Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("But the ALJ did not err. He recognized [the claimant] claimed to have difficulty sitting [for thirty minutes at a time]. And after considering the evidence, he found that her 'medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . .' But he also determined that the evidence did not support her claims about the intensity, persistence, and limiting effects of the alleged symptoms.").

Overall, "the ALJ need not blindly accept a treating physician's opinion—[he] may discount it if it is internally inconsistent or contradicted by other substantial medical evidence in the record." *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012) (citation omitted). "Courts have consistently held that it is the province of the ALJ and not the courts to resolve conflicts in medical evidence." *Nunez v. Bowen*, No. 88 C 729, 1990 WL 156521, at *2 (N.D. Ill. Oct. 9, 1990) (citing *Struck v. Heckler*, 732 F.2d 1357, 1364 (7th Cir. 1984)). Here, the ALJ explained his reasoning for discounting Dr. Frazier's opinion, and the Court will not reweigh the evidence now. *See Clifford*, 227 F.3d at 869. According, remand is not necessary on these grounds either. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally

articulate[s] his reasons for crediting or rejecting evidence of disability." (alteration in original)
(citations and internal quotation marks omitted)).

### E. Credibility Determination

Schnelker next takes issue with the ALJ's treatment of her symptom testimony. In that
regard, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds
> that the allegations concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record for the
> reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence,
> and limiting effects of her symptoms, they are inconsistent because
> the substantial evidence of record simply does not support the
> claimant's allegations.

(AR 23). Schnelker claims that the ALJ erred in considering her hearing testimony by
erroneously stating that she sought chiropractic treatment in the fall of 2019 instead of from
February 2018 through June 2018, and for failing to consider her good work record. (ECF 27 at
26-27; *see* AR 396-99 (chiropractic treatment notes from David Holliday, D.C.)). Schnelker also
argues that the ALJ failed to fairly account for her obesity. (ECF 27 at 27-28).

Generally, the Court will "overturn an ALJ's adverse credibility determination only if it
is unsupported by substantial evidence or rests on legally improper analysis." *Lambert v.
Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (citing *Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th
Cir. 2016)). Said another way, an ALJ's credibility determination will not be overturned unless
it is "patently wrong." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). That being said, the
ALJ's credibility determination "must contain specific reasons for the finding on credibility,
supported by the evidence in the case record, and must be sufficiently specific to make clear to

the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Norris v. Astrue*, 776 F. Supp. 2d 616, 632 (N.D. Ill. 2011) (citing SSR 96-7P, 1996 WL 374186, at *2 (July 2, 1996)); *see also* SSR 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017) (superseding SSR 96-7P) ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

As an initial point, the Court cannot say that the ALJ's misdating of Schnelker's chiropractic treatment makes his credibility analysis "patently wrong."  As already discussed, the ALJ first considered the objective medical evidence discussed *supra*.  (AR 27).  The ALJ then observed that:

> In the fall of 2019, [Schnelker] sought chiropractic care.  She alleged stiffness, tenderness to palpation, and objective exam was for tightness and subluxation.  Her subjective complaints ranged from describing her level of impairment as "not too bad" to she could "barely walk."  She admitted that chiropractic care helped her 70% and the general unremarkable observations, described above, continued, such as: no muscle aches, no muscle weakness, no arthralgias, joint pain, no neck pain, no swelling, no loss of motion, she remained with intact strength, intact sensation, and non-antalgic gait.

(AR 27 (internal citation omitted)).  It appears, then, that the ALJ primarily cited the chiropractic records as further examples of Schnelker's subjective complaints which he contrasted to the lack of objective evidence in the record.  *See* SSR 16-3p, 2017 WL 5180304, at *2 ("In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."); *see also Diaz*, 55

18

F.3d at 307 ("On the other hand, evidence of Mr. Diaz's inability to walk and stand was largely based upon Mr. Diaz's own statements.  The ALJ was entitled to make a credibility determination and conclude that the extent of Mr. Diaz's impairment was exaggerated.").

The heart of Schnelker's argument seems to be that the ALJ should have considered the chiropractic evidence in the context of Schnelker's work history—namely, that she was continuing to work despite her contemporaneous complaints to her chiropractor.  (*See* ECF 27 at 27).  In support, Schnelker cites *Hill v. Colvin*, No. 15-1230, 2015 WL 7785561 (7th Cir. 2015), in which the Seventh Circuit stated that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."  *Id.* at *4 (citations and internal quotation marks omitted).

But the Seventh Circuit later clarified in *Loveless v. Colvin*, 810 F.3d 502 (7th Cir. 2016), that "work history is just one factor among many, and it is not dispositive."  *Id.* at 508.  The Seventh Circuit affirmed the ALJ's credibility determination in *Loveless* despite the ALJ's failure to expressly consider the claimant's significant work history, explaining that "the ALJ's silence [about the claimant's good work record] is not enough to negate the substantial evidence supporting the adverse credibility finding."  *Id.*; *see Best v. Berryhill*, 730 F. App'x 380, 383 (7th Cir. 2018) ("[N]one of [the cases cited by the claimant] establish that an ALJ commits reversible error by not mentioning a claimant's work history in the written opinion."); *see also Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

Also, Schnelker suggests that the ALJ should have placed greater emphasis on her obesity when making his credibility determination.  (ECF 27 at 28).  The sole discussion of Schnelker's obesity came at step two, where the ALJ declared that "[while Schnelker] is

technically obese with a BMI at about 36 . . . such obesity does not cause limitations of function that would rise to the level of causing more than a minimal limitation in the claimant's ability to complete work activity." (AR 21). Accordingly, the ALJ found that Schnelker's obesity was not a severe impairment. (*Id.*).

That being said, even if an impairment is non-severe, "[a]n ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing 20 C.F.R. § 404.1545(a); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008)). "An ALJ must also analyze a claimant's impairments in combination" when determining the RFC. *Id*. (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). "For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1P, 2002 WL 34686281, at *5 (Sept. 12, 2002). But the burden is on the claimant to "specify how [her] obesity further impaired [her] ability to work." *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (citing *Skarbek*, 390 F.3d at 504).

Here, Schnelker primarily takes issue with the ALJ's  characterization of her as "technically obese" in an effort to minimize the condition, when her BMI has reached as high as 43.3. (ECF 27 at 28 (citing AR 582, 585)). But Schnelker does not otherwise point to any evidence suggesting greater limitations are necessary due to her obesity. Nor does Schnelker explain how her obesity undermines the ALJ's credibility determination to the point that it is patently wrong. While Schnelker faults the ALJ for not applying an "even-handed analysis of obesity" (ECF 27 at 28), she does not otherwise show how the credibility determination is not

supported by substantial evidence.  Despite "colorable arguments [in Schnelker's favor], [the Court] will not reweigh the evidence."  *Gedatus*, 994 F.3d at 901.

In sum, I cannot say that the ALJ's credibility determination is "patently wrong."  *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the Court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)).  Therefore, remand is once again not required.

### F.  Step Five

In her final argument, Schnelker contends that her prior arguments show that she should have been limited to sedentary exertional level jobs.  (ECF 27 at 29); *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").  While it is not particularly clear, Schnelker presumably means that if the postural limitations opined by Dr. Frazier were included in the RFC, or the ALJ had adequately considered her obesity, then she would be restricted to sedentary work.[4]

But as already explained, the ALJ adequately articulated why he did not find Dr. Frazier's opinion persuasive and as such he was not required to include these limitations in the

---

[4] The VE testified that alternating postural positions every 15 to 30 minutes, resulting in off-task behavior 5 minutes at a time, would be preclusive of competitive employment.  (AR 92).

RFC.  *See Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) ("The ALJ did not err in relying

on that testimony because it reflected Sims's impairments to the extent that the ALJ found them

supported by the evidence in the record.").  Further, as discussed *supra*, Schnelker does not

specify how her obesity, or any other impairment, necessitates a restriction to sedentary work.  In

any event, the ALJ made the alternative finding that Schnelker could perform a number of

sedentary jobs in the national economy including document preparer, call out operator, and

telephone quotation clerk.  (AR 30).  Thus, so long as these jobs exist in significant numbers in

the national economy, any error in failing to limit Schnelker to sedentary work is harmless.  *See

Guranovich v. Astrue*, 465 F. App'x 541, 543 (7th Cir. 2012) ("Because the ALJ's decision

would be the same under this alternative RFC at step five, any error at step four was harmless.");

*Diaz*, 55 F.3d at 307 (concluding that the ALJ erred in finding the claimant could perform light

work, but not in finding the claimant could perform sedentary work).

Schnelker does contend, though, that even if she were limited to sedentary work, the ALJ

still failed to identify jobs that exist in significant numbers in the national economy.  (ECF 27 at

30).  Again, the ALJ found at step five that Schnelker could perform the following sedentary

jobs:  document preparer (18,000 jobs), call out operator (45,000 jobs), and telephone quotation

clerk (35,000 jobs).  Citing *Sally S. v. Berryhill*, No. 2:18-cv-460, 2019 WL 3335033, at *11

(N.D. Ind. July 23, 2019)—which held that 120,350 or .08% of jobs existing in the national was

not a significant number—Schnelker contends that these 98,000 sedentary jobs identified by the

ALJ is insufficient.  (ECF 27 at 30).  This argument, however, is also unpersuasive.

"The Seventh Circuit has not affirmatively established the threshold for the number of

jobs in the national economy that qualifies as significant."  *John C. v. Saul*, No. 4:19-cv-04111-

SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021).  In *Weatherbee v. Astrue*, the

Seventh Circuit found that 140,000 representative jobs in the national economy was "well above

the threshold for significance," yet did not definitively identify an actual threshold.  649 F.3d

565, 572 (7th Cir. 2011); *see also Angela L. v. Saul*, No. 1:20-cv-00481-SEB-DML, 2021 WL

2843207, at *5 (S.D. Ind. July 7, 2021); *John C.*, 2021 WL 794780, at *5.  In *Primm v. Saul*, the

Seventh Circuit found that 110,000 jobs in the national economy was a significant number.  789

F. App'x 539, 546 (7th Cir. 2019).  Also, in *Collins v. Berryhill*, the Seventh Circuit found that

just 55,000 jobs was a significant number of jobs nationally.  743 F. App'x 21, 25-26 (7th Cir.

2018).  And just last year, the Seventh Circuit commented in *Mitchell v. Kijakazi* that 30,000

jobs was a significant number nationally.  No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. 2021).

But the *Primm* court relied on *Liskowitz*, a case involving regional, rather than national,

numbers.  *Primm*, 789 F. App'x at 546; *see Liskowitz*, 559 F.3d at 743 (finding that 4,000 jobs in

the Milwaukee area was a significant number and commenting that "it appears to be well-

established that 1,000 jobs is a significant number" (collecting cases)).  The *Collins* court,

indirectly, did as well.  743 F. App'x at 25-26 (relying on *Brown v. Colvin*, 845 F.3d 247, 255

(7th Cir. 2016), which in turn relied on *Liskowitz*).  The same occurred in *Mitchell*.  2021 WL

3086194, at *3 (citing *Weatherbee*, 649 F.3d at 572, which in turn relied on *Liskowitz*, 559 F.3d

at 743).  Some district judges have concluded that "reliance on *Liskowitz*'s regional threshold is .

. . suspect (and, by extension, so is the reliance on *Primm*)" when considering a claimant's

argument challenging the number of national jobs identified.  *James A. v. Saul*, 471 F. Supp. 3d

856, 859-60 (N.D. Ind. July 10, 2020).  Therefore, while *Primm, Collins,* and *Mitchell* provide

some guidance, they are not without vulnerability.  *See Engel v. Kijakazi*, No. 20-CV-1206-SCD,

2021 WL 4843871, at *11 (E.D. Wis. Oct. 18, 2021) (collecting cases) ("Engel and other courts have accused the Seventh Circuit of misapplying *Liskowitz* in cases (like *Mitchell*, *Weatherbee*, and *Primm*) involving national numbers.  That's possible . . . .  More likely, though, it appears from the Seventh Circuit's interpretation of its own prior holding in *Liskowitz* that 1,000 jobs nationally can be a significant number of jobs.").

"[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant."  *Angela L.*, 2021 WL 2843207, at *5 (citing *John C.*, 2021 WL 794780, at *5); *compare Sally S.*, 2019 WL 3335033, at *11 (120,350 jobs nationally is not a significant number), *with Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs nationally is a significant number).  Thus, this circuit lacks definitive guidance on what constitutes a "significant number" of jobs in the national economy.  *See Sundsmo v. Saul*, No. 20-cv-100-wmc, 2020 WL 6817112, at *7 (W.D. Wis. Nov. 20, 2020) (concluding 67,327 jobs nationally was a significant number, observing that "this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations . . . ."); *see also Ellis v Kijakazi*, No. 20-CV-719, 2021 WL 3514701, at *5 (E.D. Wis. Aug. 9, 2021) (observing the "lack of clarity from the Seventh Circuit regarding . . . 'significant numbers'" when concluding that 14,500 nationally was not a significant number).

The undersigned Magistrate Judge faced a similar argument last year in *Knapp v. Saul*, No. 1:20-cv-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021), *R. & R.*

*adopted by* 2021 WL 536483 (N.D. Ind. Feb. 12, 2021).  There, I rejected the claimant's

argument that 120,000 jobs nationally was not a significant number.  *Id.*  In doing so, I

commented that "even when considering just the three jobs identified by the VE, the ALJ

provided a sufficient number of jobs through his identification of 29,000 polishing machine

operator jobs, 22,000 sorting machine operator jobs, and 16,500 wire insulator jobs."  *Id.* at *4*.

Thus, at least in the facts presented in *Knapp* and under the law at the time, I viewed that 67,500

jobs in the national economy would still be a significant number of jobs.  *Id.*; *see also Sundsmo*,

2020 WL 6817112, at *7 (finding that 67,327 jobs nationally was a significant number of jobs);

*Angela L.*, 2021 WL 2843207, at *6 (finding that 53,200 jobs nationally was a significant

number of jobs).  And more recently, I have found as few as 35,800 jobs nationally to be a

significant number of jobs.  *VanAuken v. Comm'r of Soc. Sec.*, No. 1:21-CV-00268-SLC, 2022

WL 683205, at *5 (N.D. Ind. Mar. 8, 2022), *appeal docketed*, No. 22-1824 (7th Cir. May 9,

2022); *see also Levitz v. Comm'r of Soc. Sec.*, No. 1:20-cv-00407-SLC, 2022 WL 110239, at *4-

5 (N.D. Ind. Jan. 12, 2022) (finding 37,700 jobs nationally was a significant number), *appeal*

*docketed*, No. 22-1390 (7th Cir. Mar. 11, 2022); *Zych v. Comm'r of Soc. Sec.*, No. 1:20-cv-

00414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 15, 2021) (finding 41,000 jobs nationally

was a significant number of jobs).

     Here, the number of representative jobs cited by the ALJ is more than that—98,000.  In

the absence of Seventh Circuit controlling precedent on the matter, district courts in this circuit

have turned to other circuits for guidance.  *See, e.g.*, *Wildenberg v. Kijakazi*, No. 20-cv-297-bbc,

2021 WL 4077498, at *7 (W.D. Wis. Sept. 8, 2021); *Ducharme v. Saul*, No. 20-cv-356-bbc,

2021 WL 1711787, at *5 (W.D. Wis. Apr. 30, 2021), *appeal docketed*, No. 21-2204 (7th Cir.

June 28, 2021); *Marko L. v. Saul*, No. 16 C 9723, 2021 WL 843427, at *7 (N.D. Ill. Mar. 5,

2021).  In that regard, the Third, Sixth, and Eighth Circuits have all found that far fewer than

98,000 jobs is a significant number of jobs in the national economy.  *See Sanchez v. Comm'r of*

*Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) (finding 18,000 jobs in the national economy

significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000

jobs in the national economy significant); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-

29 (9th Cir. 2014) (finding 25,000 jobs in the national economy significant); *Johnson v. Chater*,

108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy significant).

 And to the extent that Schnelker relies on the *Sally S.* decision finding that 120,350 jobs

was not a significant number nationally, 2019 WL 3335033 at *11, that same district judge

recently found in another case that just 50,566 jobs was a significant number of jobs nationally.

*See Rhonda F. v. Kijakazi*, No. 3:21cv254, 2022 WL 292738, at *7 (N.D. Ind. Feb. 1, 2022).

Further, several district courts in this circuit have found significantly less than 98,000 jobs to be

a significant number.  *See, e.g.*, *Ducharme*, 2021 WL 1711787, at *5 (finding 31,000 jobs in the

national economy significant); *Wildenberg*, 2021 WL 4077498, at *7 (finding 33,000 jobs in the

national economy significant); *Iversen v. Berryhill*, No. 16 CV 7337, 2017 WL 1848478, at *5

(N.D. Ill. May 8, 2017) (finding 30,000 jobs in the national economy significant); *Simcoe v.*

*Colvin*, No. 1:14-cv-01488-SEB-MJD, 2015 WL 3960964, at *5 (S.D. Ind. June 29, 2015)

(commenting that 32,000 jobs nationally was likely a significant number).  Accordingly, I

conclude that 98,000 jobs in the national economy is a "significant number" of jobs for purposes

of the ALJ's step-five determination in this case.

In sum, the Commissioner's step-five analysis is supported by substantial evidence. Schnelker points to no evidence showing a need to be restricted to sedentary work, and even if there was such a need, the ALJ identified a significant number of sedentary jobs Schnelker could perform.  As such, this argument also fails, and no remand is required.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Schnelker.

SO ORDERED.

Entered this 12th day of July 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge